STORCH AMINI & MUNVES PC
Bijan Amini
Avery Samet
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
(212) 490-4100

*Attorneys for the Chapter 7 Trustee*


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | Case No: 10-49857-CEC |
| ACME CAKE CO., INC., | : | |
| | : | |
| Debtor. | : | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| LORI LAPIN JONES, CHAPTER 7 TRUSTEE | : | |
| FOR ACME CAKE CO., INC., | : | Adv. Pro. No. _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FRANKLIN, GRINGER & COHEN, P.C. | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------------x

        Plaintiff Lori Lapin Jones, as the chapter 7 Trustee (the "Trustee") for Acme Cake Co.,

Inc. (the "Debtor" or "Acme") by and through her special counsel, as and for her complaint

against Franklin, Gringer & Cohen, P.C. ("FGC"), hereby alleges as follows.

## <u>INTRODUCTION</u>

        1.        This action for legal malpractice arises out of FGC's negligent representation of

the Debtor in connection with an action entitled *Sabitini Frozen Foods LLC v. Acme Cake Co.,*

*Inc.* (the "Action"). Prior to the Action, the Debtor was a 72 year old family-owned baked goods

manufacturer.  As a result of FGC's negligent representation, the plaintiff in the Action, Sabitini

Frozen Foods LLC ("Sabitini"), obtained a $1,768.890 verdict against the Debtor, forcing the

Debtor to promptly file a chapter 11 petition, and, ultimately, to cease operations.

2.      In 2006, Sabatini commenced the Action alleging breach of a contract for the

distribution of baked goods pursuant to which the Debtor was required to pay Sabitini

commissions.  The Debtor retained FGC to defend the Debtor in the Action and to assert

counterclaims against Sabitini.  During the course of the Action, FGC failed to (i) assert

necessary defenses in the Joint Pre-Trial Order, leading to the trial court's precluding Acme from

presenting those defenses to the jury, (ii) identify key witnesses and documents during discovery,

leading to the trial court's preclusion of these witnesses and documents from introduction into

evidence at trial, and (iii) conduct discovery into Sabitni's asserted damages, leading to FGC

being caught by "complete surprise" by Sabitini's testimony at trial.

3.      By this complaint, the Trustee seeks damages as a result of FGC's negligent

representation of the Debtor.

## THE PARTIES

4.      The Debtor commenced a chapter 11 bankruptcy case on April 2, 2008 in the

United States Bankruptcy Court for the Eastern District of New York (the "First Bankruptcy

Case").  On October 18, 2010, the bankruptcy court dismissed the First Bankruptcy Case.  On

October 20, 2010, an involuntary petition for relief pursuant to chapter 7 of the Bankruptcy Code

was filed against the Debtor (the "Second Bankruptcy Case").  On November 22, 2010, an order

for relief was entered in the Second Bankruptcy Case.

5.      The Trustee was appointed on November 23, 2010.  The Trustee maintains an

office at 98 Cutter Mill Road, Suite 201N, Great Neck, New York, 11021.

2

6.      FGC is a New York professional corporation with its principal place of business at 666 Old Country Road, Suite 202, Garden City, New York.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter pursuant 28 U.S.C. § 1334 because this action arises in or is related to the Debtor's Second Bankruptcy Case.  Venue is appropriate in this district pursuant to 28 U.S.C. § 1409 as the Second Bankruptcy Case is pending in this district.

## FACTS

A.  Background

8.      The following allegations are based on the publicly available record in the Action, as well as information provided to the Trustee by FGC and the Debtor.

9.      In August 1999, Acme and Sabitini entered into a contract for the distribution of baked goods to be produced by Acme (the "Contract").

10.     FGC represented Acme in connection with the Contract.

11.     The Contract was negotiated and signed in FGC's offices.

12.     The Contract provided that Sabitini would have exclusive rights to the distribution and sale of certain defined frozen baked goods produced by Acme.

13.     Acme agreed to pay Sabitini a commission for all other orders placed by any customer brought to Acme by Sabitini.

14.     The Contract contained an initial term of one (1) year, which would then automatically renew absent previous cancellation by either party, for two additional five (5) year terms.

15.     By March 2004, the relationship between Acme and Sabitini had deteriorated.

3

Acme complained that Sabitini was failing to perform under the Contract and was jeopardizing Acme's business relationships.

16.     Specifically, the Debtor complained that Sabitini (i) failed to transmit client orders to Acme on a timely basis, (ii) failed to maintain a truck with which to timely delivery the orders and (iii) compelled Acme to lower its prices under false circumstances, solely in order to prop-up Sabitini's prices.

17.     By that point, Sabitini was behind on two payments owed to Acme totaling approximately $30,000.

18.     Acme terminated the Contract with Sabitini.

19.      On June 15, 2006, Sabitini commenced the Action against Acme in the United States District Court for the Eastern District of New York, Case No. 1:06-CV-02968-JG-RLM, alleging breach of contract, unjust enrichment and seeking a permanent injunction against Acme's utilization of Sabitini's proprietary customers.

20.     Discovery in the Action closed on December 13, 2007.

21.     On December 19, 2007, both Acme, represented by FGC, and Sabitini represented to the trial court that the case was ready for trial.

22.     Between March 17 and March 19, 2008, the parties conducted a jury trial before the Honorable John Gleeson.

23.     On March 19, 2008, the jury returned a verdict in Sabitini's favor of $1,768,840.

B.   FGC Fails to Assert Key Defenses in Joint Pre-Trial Order

24.     On month prior to trial, on February 11, 2008, FGC, together with counsel for Sabitini, submitted the parties' Joint Pre-Trial Order.

25.     The Joint Pre-Trial Order set forth the defenses upon which Acme would rely at

trial.

26.    FGC failed to assert a defense based upon Sabitini's poor performance under the

Contract or a defense that Sabitini had breached its duty of good faith and fair dealing.

27.    As a result of these failures, the trial court precluded Acme from presenting these

defenses to the jury in order to explain Acme's March 2004 termination of the Contract.

28.    The trial court stated to FGC:

> Where has that argument been? I'm looking at your defenses and
> counterclaims in the pretrial order, and it states here how Acme
> claims that Sabatini breached the agreement, and I don't see either
> the owning-the-truck claim or the belated-purchase order claim or
> this brand-new claim of a breach of the implied duty to act in good
> faith. It just strikes me as new.

(Trial Tr. 359-60).

29.    Moreover, FGC's failure to assert defenses based upon Sabitini's prior breach led

to the trial court affirmatively instructing the jury to <u>not</u> consider such evidence in its

determinations:

> These other issues that you're raising, you haven't yet disabused
> me of the notion that I should tell the jury, at the end of the case:
> Here is what the case is about. It's not about whether or not the
> failure to supply a truck constituted a breach. It didn't. It's not
> about whether getting a purchase order late in the game constituted
> a breach. It didn't.
>
> …
>
> I realize you may have some stuff back in your answer. We're at
> trial now. I see your summary of your defenses and counterclaims.
> I don't see this other stuff in it, and I don't see why, the way this
> case is shaping up, these other allegations ought to be in it.

(Trial Tr. 360-362).

30.     Thus, when instructing the jury, the trial court stated:

> To be sure you focus clearly on your task, there are a couple of things I need to tell you are not in issue.  One pertains to the truck you heard testimony about.  Even if you find that Sabatini failed to maintain a truck of its own, you should not consider this to mean that Sabatini failed to perform its duties under the contract.  Additionally, if you find that Sabatini submitted purchase orders late, you shouldn't consider this to mean that Sabatini failed to perform its duties under the contract.  Finally, the mere fact that a contract is significantly more profitable for one party does not justify the other party in failing to perform its duties under the contract.

(Trial Tr. 515)

31.     As a result of FGC's failure to assert defenses in the Joint Pre-Trial Order which it knew about (and had evidence concerning), the jury was instructed to not consider any of them.

C.  <u>FGC Fails to Disclose a Key Witness</u>

32.     In the Action, Sabitini claimed, among other things, that he had introduced Mitchell Levine, a broker, to the Debtor, and that, therefore, the customers brokered by Mr. Levine constituted proprietary clients of Sabitini.  Sabitini sought damages in the form of unpaid commissions from Acme arising out of Acme's sales to these customers.

33.     The Debtor's principal William Wenzel insisted that he had introduced Levine to Sabitini.  Levine testified similarly at his deposition.

34.     In the Joint Pre-Trial Order, FGC asserted the defense that "Plaintiff never introduced Defendant to any customers, all the customers came through a broker that Defendant introduced to Plaintiff."

35.     FGC failed to disclose that the Debtor intended to rely upon the testimony of Levine to supports its defense as required by Rule 26(a)(1) of the Federal Rules of Civil

Procedure.

36.     As a result, the trial court refused to allow the jury to see the video testimony from Levine's deposition.

37.     Therefore, the Debtor was unable to present crucial third-party testimony in support of its defense.

38.     FGC also failed to amend or seek to amend its Rule 26 disclosures.

39.     According to a billing invoice submitted to the Debtor, in November 2007, one month prior to the discovery cutoff, FGC held a conference call with both Wenzel and Levine.

40.     Nevertheless, after conducting this call with Levine, FGC failed to amend the Rule 26 disclosures to preserve the Debtor's ability to call Levine at trial.  Instead, on December 19, 2007, FGC reported that the case was ready for trial.

41.     On January 22, 2008, FGC, on behalf of the Debtor, wrote to the Court to request an adjournment of the trial because the Debtor's "chief non-party witness," Levine, would be unavailable.

42.     The Court allowed the deposition of Levine to go forward.

43.     But, the Court ultimately granted Sabitini's motion *in limine* to exclude Levine's video testimony because of the failure of FGC to offer "substantial justification for the belated disclosure by the [Debtor] that Levine would be its witness."  (Trial Tr. 3).

D.  FGC Fails to Conduct Discovery Into Sabitini's Damages

44.     FGC failed to conduct discovery into Sabitini's alleged damages.

45.     FGC failed to depose Sabitini.

46.     FGC failed to serve interrogatories concerning Sabitini's calculation of damages.

47.     FGC failed to procure cognizable evidence concerning Sabitini's cost of doing

business, including for example, evidence concerning Sabitini's insurance costs, commissions, trucking expenses, office supplies and wages.

48.     Thus, FGC was caught entirely by "complete surprise" at trial (<u>e.g.</u>, statement by FGC at Trial Tr. 254) and was reduced to petitioning the court, at trial, to simply bar all testimony by Sabitini concerning his damages – a petition which the Court summarily denied (<u>id.</u>).

49.     FGC's failings caused or directly contributed to the jury's determination that (i) the Debtor wrongfully terminated the Contract with Sabitini, (ii) the clients brokered through Levine were Sabitini's exclusive clients and (iii) Sabitini was entitled to over $1.7 million in lost profits.

50.     By Order dated March 22, 2010, the trial court directed the Clerk of Court to enter judgment against the Debtor in the amount of $1,902,032.08, which included pre-judgment interest.

51.     The Clerk of the Court entered judgment against the Debtor in that amount on March 24, 2010.

## FIRST CAUSE OF ACTION
### (Malpractice)

52.     The Trustee repeats and realleges each and every allegation contained in paragraphs 1-51 as if the same were set forth in full herein.

53.     As counsel to the Debtor, FGC owed the Debtor a duty to exercise the skill and knowledge ordinarily possessed by a member of the legal profession experienced in such matters and to exercise reasonable care, prudence and diligence in the performance of its professional obligations.

54.     FGC breached such duty to the Debtor.

55.     But for FGC's negligence, the Debtor would not have sustained the verdict of $1.7 million against it and would not have been forced into bankruptcy and subsequently out of business.

56.     As a direct result of FGC's negligence and malpractice, the Debtor suffered damages in an amount to be determined at trial, attorneys' fees and expenses as a result of such negligence, plus interest.

WHEREFORE, the Trustee for the Debtor respectfully requests that this Court enter judgment in her favor and against FGC as follows:

i.      Damages, in an amount to be determined at trial, plus interest;

ii.     Attorneys' fees, costs and expenses incurred in this litigation; and

iii.    Such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        November 16, 2012

STORCH AMINI & MUNVES PC
Special Counsel to Plaintiff, Lori Lapin Jones, as
Chapter 7 Trustee for Acme Cake Co., Inc.


By: /s/ Avery Samet
        Bijan Amini
        Avery Samet
Two Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100